UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JONATHAN KLEINS BERRY,

    Plaintiff,

v.                                          Case No. 3:23cv24747-LC-HTC

A. DRIGGERS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant Aaron Driggers' motion to dismiss (Doc. 20) and Plaintiff Jonathan Berry's response in opposition (Doc. 22). After reviewing the parties' submissions and the relevant law, the undersigned concludes the motion should be granted, as Berry failed to exhaust his available administrative remedies regarding his excessive force claim before filing suit. Accordingly, this case should be DISMISSED WITHOUT PREJUDICE.

**I.**     **Background**

Berry, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections ("FDOC"). His amended complaint alleges Driggers, a correctional officer at Walton Correctional Institution ("Walton CI"), violated the

Eighth Amendment on June 26, 2023,[1] by spraying him with chemical agents without justification. Doc. 6.

Driggers has filed a motion to dismiss, arguing that Berry failed to exhaust his administrative remedies regarding his excessive force claim. Doc. 20. The undersigned agrees.[2]

## II. Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement is not subject to waiver by a court, or futility or inadequacy

---

[1] Berry has provided different dates for when Driggers sprayed him with chemical agents. His grievances identify the date as either June 25 (Doc. 20 at 21, 41, 44) or June 30 (Doc. 20 at 38). However, because the amended complaint indicates it occurred on June 26 (Doc. 6 at 5-6), the undersigned will use that date in this Report and Recommendation.

[2] Driggers also argues Berry's request for punitive damages is barred by 18 U.S.C. § 3626. Because Berry's excessive force claim is unexhausted, the Court need not address Driggers' argument regarding punitive damages.

exceptions. *See Booth*, 532 U.S. at 741 n.6.  Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter.  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quotation marks and citations omitted).  "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."  *Id.*  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id*. (citing *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008)).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376).  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his

available administrative remedies." *Id*. at 1082 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

The grievance procedures promulgated by the FDOC generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

### III.  Discussion

Driggers argues Berry failed to exhaust his administrative remedies regarding his excessive force claim because he never properly completed the 3-step grievance process. Specifically, Driggers asserts Berry filed: (1) only one informal grievance regarding the June 2023 incident, dated October 23, 2023, which was denied; (2) no formal grievances; and (3) three grievances to the Secretary, which were returned without action for not complying with FDOC rules.

Berry claims he did exhaust his administrative remedies. He says he filed three informal grievances that went unanswered, then wrote a grievance to the Secretary on July 3, 2023, which stated what happened and why he "went over the institution level."[3] Doc. 22 at 2; *see also* Doc. 20 at 38 (grievance to the Secretary

---

[3] Berry's response says he wrote this "regular grievance" on July 11, 2023. Doc. 22 at 2. However, Berry's description of the grievance and the reason for its return are consistent with his grievance to the Secretary dated July 3, which was stamped "received" on July 11. Doc. 20 at 38.

Case No. 3:23cv24747-LC-HTC

dated July 3, 2023). That grievance was returned without action because Berry allegedly failed to file a grievance at the institutional level and failed to provide a valid reason for not following the rules. Doc. 20 at 37.

After reviewing the record, the undersigned finds Berry's July 3 grievance to the Secretary did not exhaust his administrative remedies. First, the FDOC has no record of Berry filing any informal grievances regarding Driggers immediately following the June 26 incident.[4] However, even assuming Berry immediately filed an informal grievance about the June 26 incident, the FDOC has 15 days to respond to an informal grievance. *See* Fla. Admin. Code r. 33-103.011(3)(a) ("Following the initial receipt of an informal grievance, a written response shall be completed within 15 calendar days."). Because the FDOC had until at least July 10 to respond to an informal grievance, Berry's July 3 grievance to the Secretary was premature.

Second, even if the FDOC fails to respond to an informal grievance, that failure only allows an inmate to proceed to the formal grievance step, not directly to the Secretary. *See* Fla. Admin. Code r. 33-103.011(4) ("Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If

---

[4] Berry does not specify when he filed the three informal grievances and he has presented no evidence of them. Driggers presented a declaration from the Informal Grievance Coordinator at Santa Rosa Correctional Institution. Doc. 20 at 19. The declaration indicates that between June 25 and December 8, Berry filed informal grievances about unrelated matters on August 30, November 8, and November 21. Doc. 20 at 19, 23.

Case No. 3:23cv24747-LC-HTC

this occurs, the complainant must clearly indicate this fact when filing at the next step."). Driggers, however, has presented evidence showing Berry never filed *any* formal grievances between June 25, 2023, and when he filed this action. Doc. 20 at 27-29 (declaration of Formal Grievance Coordinator). And Berry's response to the motion to dismiss does not assert he ever filed a formal grievance. Thus, Berry would not have been entitled to file a grievance with the Secretary based on officials' failure to respond to the three informal grievances he allegedly filed.

Third, although Berry claims his July 3 grievance to the Secretary explained why he "went over the institution level," the grievance indicated Berry was bypassing the institutional level steps not because officials had failed to respond to his grievances, but because he felt "as if they will try to cover this up because [he is] seeking to press charges and file a lawsuit against [Walton CI] for neglect and abuse." Doc. 20 at 38. And while inmates are allowed to file "grievances of reprisal" directly with the Secretary, a belief that there will be a "cover up" at the institution is not an acceptable reason for bypassing the informal and formal grievance levels. *See* Fla. Admin. Code. r. 33-103.007(3)(a) (identifying the types of grievances that may be filed directly to the Secretary); *see also* Fla. Admin. Code r. 33-103.002(9) (defining a grievance of reprisal as a "grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure").

Based on the foregoing, the undersigned concludes Berry's July 3 grievance to the Secretary was properly returned without action and, thus, did not exhaust his excessive force claim against Driggers. *See Pavao v. Sims*, 679 F. App'x 819, 825 (11th Cir. 2017) (noting grievances returned without action for non-compliance with procedural rules are not sufficient to exhaust).

Likewise, the grievances Berry filed in October 2023 did not properly exhaust his excessive force claim. On October 6, 2023, Berry filed a grievance directly to the Secretary that: (1) complained about Driggers' use of chemical agents on June 25; (2) stated that he "wrote two grievances and … 3 request forms to try and speak with the inspector general" but had not received a response in over 90 days; and (3) indicated he bypassed the institutional grievance levels because officials either threw his grievances out or "just didn't answer them." Doc. 20 at 41. The Secretary returned this grievance without action on October 18, 2023, because Berry failed to submit his grievance at the appropriate level and failed to provide an acceptable reason for not following the rules. Doc. 20 at 40.

Berry then filed an informal grievance on October 23, 2023, that indicated: (1) he wrote three grievances about the June 2023 incident with Driggers; (2) he then wrote a formal grievance "about not getting a response in over 90 days"; (3) none of those grievances were answered; (4) he made a copy of the formal grievance; and (5) he wanted to press charges against Driggers for violating the Eighth Amendment.

Doc. 20 at 21.  This informal grievance was denied on October 24; the response stated: "I do not show receiving any grievances from you in June.  This issue is out of the time frame."  *Id.*; *see also* Fla. Admin. Code r. 33-103.011(1)(a) (stating informal grievances "[m]ust be received within 20 days of when the incident or action being grieved occurred").  Neither Berry nor the record indicate he appealed the denial of this grievance by filing a formal grievance.

Instead, Berry filed another grievance to the Secretary on October 24, the same day the informal grievance was denied.  Doc. 20 at 44.  It described Berry's allegations against Driggers and explained (1) he was "going over this institution with this grievance" because none of his previous grievances were answered; and (2) he was "not bypassing the first level because [he] did write a grievance 3 months ago but with no answer."  *Id.*  The Secretary returned this grievance without action based on Berry's failure to submit an institutional-level grievance and failure to provide an acceptable reason for not doing so.  Doc. 20 at 43.

The undersigned finds Berry's October 2023 grievances did not exhaust his excessive force claim.  As an initial matter, although Berry asserts generally that he "was not afforded proper relief for [his] case" due to "staff throwing [his] grievances out" (Doc. 22 at 2), he never specifically explains why the return of his grievances to the Secretary without action was improper.

In addition, in accordance with FDOC rules, Berry could have appealed the denial of the October 23 informal grievance by filing a formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(b) (stating formal grievances must be received no later than 15 days from the date on which the informal grievance was responded to"). Berry, however, did not do so. And, as previously discussed, Driggers has presented undisputed evidence that Berry never filed any formal grievances.[5] Because Berry was required to file a formal grievance about his excessive force claim before filing a grievance to the Secretary, both the October 6 and October 24 grievances were properly returned without action due to Berry's failure to comply with FDOC rules.[6]

## IV. Conclusions

Based on the foregoing, none of Berry's grievances regarding his excessive force claim were approved and he never filed a grievance with the Secretary's office which complied with FDOC rules. Thus, he did not properly exhaust his excessive force claim and this case should be dismissed without prejudice. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

---

[5] Berry's October 23 informal grievance does state he "wrote a formal grievance about not getting a response in over 90 days." Doc. 20 at 21. The grievance also indicates Berry made a copy of the formal grievance, but he has not presented it to the Court and his response to the motion to dismiss makes no mention of filing a formal grievance. Moreover, filing a formal grievance about not receiving responses to prior grievances would not necessarily exhaust an excessive force claim.
[6] Because Berry's response does not dispute he failed to file a formal grievance, Driggers' motion can be resolved under step one of the *Turner* analysis.

Case No. 3:23cv24747-LC-HTC

effectively without imposing some orderly structure on the course of its proceedings.").

Accordingly, it is RECOMMENDED:

1. That Defendant Aaron Driggers' motion to dismiss (Doc. 20) be GRANTED, and this case be DISMISSED WITHOUT PREJUDICE due to Plaintiff Jonathan Berry's failure to exhaust his administrative remedies.

2. That the clerk close the file.

At Pensacola, Florida, this 11th day of July, 2024.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.